**Affirmed and Memorandum Opinion filed June 30, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00595-CR

---

## RICARDO MARTINEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1315568**

---

## M E M O R A N D U M    O P I N I O N

Appellant Ricardo Martinez appeals the trial court's revocation of his deferred-adjudication community supervision. In two issues, appellant asserts that he received ineffective assistance of counsel and that his eight-year sentence amounts to cruel and unusual punishment. We affirm.

### FACTUAL BACKGROUND

In 2011, appellant was indicted for the felony offense of aggravated robbery

with a deadly weapon. *See* Tex. Penal Code § 29.03(a)(2). Appellant pleaded guilty and the trial court deferred an adjudication of guilt, placing him on community supervision for eight years.

On May 25, 2012, the State filed a motion to adjudicate guilt, alleging four violations of the terms and conditions of his community supervision. The State alleged that appellant: (1) committed a criminal offense; (2) failed to report to his community supervision officer; (3) failed to complete 300 hours of community service; and (4) failed to pay restitution.

At the adjudication hearing, several witnesses testified on appellant's behalf. First, appellant's mother testified that he supports her financially because she is disabled and unable to work. She stated that she did her best to help appellant comply with the terms of his probation. Appellant's mother testified that he successfully completed the Young Men about Change ("YMAC") program, worked full-time, and had enrolled in college courses to become a diesel mechanic. According to his mother, appellant began using marijuana in middle school and became involved with a gang. She stated that she believed appellant would benefit from a drug rehabilitation or treatment program.

Appellant's eldest brother, Herman, also testified. Herman stated that before he moved away, he was a father figure for appellant. Herman testified that after he left home, appellant started using drugs and got involved with a gang. Herman stated that after appellant received probation, he "was really trying to do better" and was excited about going to college. According to Herman, appellant enjoyed learning and told him that YMAC "really [made] him grow up." Herman testified that he believed appellant wanted to get help for his drug problem.

Next, appellant's college professor and classmate testified. Both men stated that they were surprised to learn appellant had been involved with a gang.

2

Appellant's professor testified that appellant was attentive, eager to learn, cooperative with his classmates, and one of the better students he had in his teaching career. The professor stated that appellant made A's and B's and had good attendance. He also stated that he thought appellant had "very good chances" of developing a career as a diesel mechanic.

Appellant's classmate, Kristopher, testified that he was in the same work group with appellant and met with him several times a week. Kristopher stated that although appellant was a quiet student, he would ask questions if he did not understand something and would help other students. Kristopher testified that he was surprised when appellant told him he was on probation for aggravated robbery. He stated that in his opinion, this seemed out of character for appellant. Kristopher testified that appellant appeared to be dedicated to his studies and excited to be in the classroom. Kristopher stated that appellant seemed like he was trying to do better for himself and would try to encourage other students to stay out of trouble.

Finally, appellant testified on his own behalf. He stated that YMAC was an "eye opener" for him. He testified that before entering the program, he lived paycheck to paycheck and tried to support himself by dealing drugs. During the program, appellant realized that he needed to make a change and "put [himself] in a position where [he would] have more choices." Appellant testified that he subsequently received his high school equivalency degree and enrolled in college. He stated that working with his hands made him feel better every day, and he developed friendships with his classmates. Appellant testified that he distanced himself from the gang and focused on working and going to school.

Appellant admitted that he stopped reporting to his probation officer in July 2014, because he began smoking synthetic Kush around that time and "[i]t slipped [his] mind." Appellant testified that he did not report to his probation officer from

3

July to December 2014, and he never reached out to the probation department. Appellant admitted that he was charged for marijuana possession during this time and stated that this was part of his drug addiction. Appellant stated that he began smoking marijuana when he was ten years old. He testified that after completing YMAC, he successfully completed an outpatient drug treatment program and began attending Alcoholics Anonymous meetings. Appellant stated that he had a desire to change and that he thought he could benefit from a substance abuse treatment program. Appellant also claimed that "drugs [were] not [his] problem," but he struggled with irresponsibility.

After hearing all the testimony, the trial judge found the evidence and allegations in the motion to adjudicate to be true and found appellant guilty of aggravated robbery. The trial judge sentenced appellant to eight years in prison. Appellant appeals.

**ISSUES AND ANALYSIS**

## I.      Ineffective-Assistance-of-Counsel Claim

In his first issue, appellant claims that he received ineffective assistance of counsel at his adjudication hearing. Specifically, appellant alleges that his attorney failed to: (1) have appellant plead "not true" to the alleged probation violations; (2) adequately prepare appellant to testify at the hearing; and (3) object to appellant's eight-year sentence as cruel and unusual punishment.

### A. Standard of Review

We examine claims of ineffective assistance of counsel by applying the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). *See Ex parte Jimenez*, 364 S.W.3d 866, 882–83 (Tex. Crim. App. 2012). Under *Strickland*, appellant must prove by a preponderance of the evidence that (1)

4

counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See id.* at 883.

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In most cases, the appellant is unable to meet the first prong of the *Strickland* test because the record is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

Here, appellant did not file a motion for new trial alleging ineffective assistance of counsel, or develop a record of trial counsel's reasons for his actions. The record is silent as to counsel's trial strategy.

## B. Appellant's Claims

Appellant first contends that he received ineffective assistance of counsel at the adjudication hearing because trial counsel "stipulated to evidence that destroyed his defense." Specifically, appellant argues that trial counsel should have urged appellant to plead "not true" to the alleged probation violations, rather than "true." Appellant claims that "pleading 'true' to the allegations in the motion to

5

adjudicate defeated the purpose of the hearing itself." We disagree. Although appellant pleaded "true," the hearing was still necessary to aid the trial judge in deciding whether she should allow him to continue on community supervision, or whether his community supervision should be revoked. *See* Tex. Code Crim. Proc. art. 42.12 §§ 5, 22, 23; *Flournoy v. State*, 589 S.W.2d 705, 708 (Tex. Crim. App. 1979) (noting trial court's discretion after probation violation to order continuation, modification, or revocation of probation).

The decision to plead "true" or "not true" is personal to the defendant. *Cf. Burnett v. State*, 642 S.W.2d 765, 768 n.8 (Tex. Crim. App. 1982) (noting that while the criminal defense lawyer controls the progress of the case, the client "confronts only three personal decisions: his plea to the charge, whether to be tried by a jury and whether to testify in his own behalf"). Appellant does not contend that his plea was involuntary. In fact, appellant gave the following testimony at the adjudication hearing:

> **The Court**: The State has alleged that you violated the terms and conditions of your probation in a number of ways, specifically by possessing marijuana in a usable quantity under two ounces, by failing to report as instructed over the course of multiple months, failing to participate in the community service restitution program as ordered, failing to pay restitution as ordered. To those allegations that you've violated the terms and conditions of your probation, how do you plead, true or not true?
>
> **Appellant**: True.
>
> **The Court**: Are you pleading true freely and voluntarily?
>
> **Appellant**: Yes, ma'am.
>
> **The Court**: Are you pleading true because the allegations are true and for no other reason?
>
> **Appellant**: Yes, ma'am.
>
> **The Court**: There is no plea bargain in this case. You understand that it will be up to me to decide what the sentence will be or, before that

even, whether or not you stay on probation despite having pled true?

**Appellant**: Yes, ma'am.

**The Court**: Has anybody promised you anything or threatened you in order to get you to plead true?

**Appellant**: No, ma'am.

Additionally, appellant signed a stipulation of evidence, stating in relevant part that: (1) he was "the same person who on the date of May 25, 2012, in Harris County, Texas, entered a plea of Guilty to the offense of Aggravated Robbery"; (2) he understood the range of punishment for the offense was 5 to 99 years or life; (3) he acknowledged and agreed that the Court ordered him to follow the conditions of probation; (4) he understood the allegations set out against him in the State's motion; (5) he confessed that it was true that he violated the terms of his probation and that the State's allegations were true; and (6) he intended to enter a plea of true to the State's motion. Appellant initialed next to each of these statements.

Again, we note that trial counsel was not given any opportunity to explain his actions or strategy. A silent record that provides no explanation for trial counsel's actions usually will not overcome the strong presumption of reasonable assistance. *See Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). Here, the record contains no evidence indicating whether appellant's trial counsel advised him to plead "true" to the State's allegations, or whether appellant did so of his own accord. *See Holland v. State*, 761 S.W.2d 307, 321 (Tex. Crim. App. 1988). Likewise, appellant has not shown that he had any factual or legal defenses to the violations of community supervision alleged in the State's motion to adjudicate. Counsel could have concluded that, given the strength of the State's case, since the trial court retained the discretion to deny the State's motion and continue appellant on community supervision, appellant's best course of action was to plead "true" in an effort to demonstrate his sincerity, and argue that the

7

court should exercise its discretion and leave appellant on community supervision. *See* Tex. Code Crim. Proc. art. 42.12 §§ 5, 22, 23; *Flournoy*, 589 S.W.2d at 708. Because the record is silent regarding any explanation for trial counsel's actions, we cannot conclude that appellant has met his burden of overcoming the strong presumption of reasonably effective assistance. *See Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003).

Appellant next contends that counsel failed to prepare him to testify at the revocation hearing; however, the record does not reflect what preparation, if any, counsel undertook before the hearing. The record contains no affidavit or other evidence from either appellant or his trial counsel on the subject. Without support in the record for appellant's assertions regarding lack of preparation, he cannot demonstrate ineffectiveness in this regard. *See Thompson*, 9 S.W.3d at 813 (providing that "[a]ny allegation of ineffectiveness must be firmly founded in the record.").

Finally, appellant argues that counsel was ineffective based on counsel's failure to object that appellant's sentence was a form of cruel and unusual punishment. Before this court may conclude that counsel was ineffective for failing to make an objection, appellant must show that the trial court would have erred in overruling the objection. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (per curiam). Appellant cannot make this showing because his sentence falls within the punishment range and therefore is not cruel and unusual. *See Jagaroo v. State*, 180 S.W.3d 793, 800 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). It is not ineffective assistance for counsel to forego making frivolous arguments and objections. *Id.*

The record contains sufficient evidence to show that any objection on the basis of cruel and unusual punishment would have been futile. Appellant was

convicted of aggravated robbery with a deadly weapon, a first degree felony. *See* Tex. Penal Code § 29.03(a)(2). The statutory range of punishment for aggravated robbery is 5 to 99 years or life; appellant's eight-year sentence is clearly on the lower end of the range of punishment permitted by the Legislature. *See* Tex. Penal Code § 12.32. Punishment assessed within the statutory limits is generally not cruel and unusual punishment. *Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jagaroo*, 180 S.W.3d at 801. Had trial counsel objected to the punishment as cruel and unusual, the trial court would not have erred in overruling the objection. Thus, appellant has not shown that he received ineffective assistance of counsel in this regard. We overrule appellant's first issue.

## II.    Cruel-and-Unusual-Punishment Claim

In his second issue, appellant argues that he received cruel and unusual punishment by receiving a sentence of eight years for violating his probation. Appellant did not receive the sentence for the probation violation but for the underlying charge of aggravated robbery. Appellant contends that his sentence constitutes cruel and unusual punishment because it is "grossly disproportionate to the crime when compared to the gravity of the offense" and he could have been reinstated on probation instead of being sentenced to prison. Appellant concedes in his brief that his counsel did not object to the sentence at the hearing and that failure to object prevents making any such claim on appeal. Appellant argues, however, that his sentence constitutes fundamental error that may be raised for the first time on appeal. *See* Tex. R. Evid. 103(e).

To preserve error for review, a defendant must make a timely, specific objection at trial. Tex. R. App. P. 33.1(a). Generally, a party's failure to make a timely objection in the trial court forfeits the complaint on appeal. *Collins v. State*, 378 S.W.3d 629, 631 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Even

9

constitutional errors may be waived by failure to object at trial. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).

Texas courts have established that failure to raise an Eighth Amendment cruel-and-unusual-punishment claim at the trial level waives the claim on appeal. *See Saldano v. State*, 70 S.W.3d 873, 891 (Tex. Crim. App. 2002); *Arriaga v. State*, 335 S.W.3d 331, 334 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Such claims have been held not to be so fundamental as to relieve the appellant of the requirement of a timely, specific objection at trial. *See Curry v. State*, 910 S.W.2d 490, 497–98 (Tex. Crim. App. 1995); *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd). Because appellant did not object to his sentence on cruel-and-unusual-punishment grounds at the revocation hearing, appellant has failed to preserve error for review. We overrule appellant's second issue.

## CONCLUSION

We affirm the judgment of the trial court.

/s/     Ken Wise
Justice

Panel consists of Chief Justice Frost and Justices Boyce and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).

10